**SO ORDERED.**

**SIGNED March 28, 2013.**



ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

_____

```
            UNITED STATES BANKRUPTCY COURT
             WESTERN DISTRICT OF LOUISIANA


IN RE:

ADRIENNE MARIE SMITH                      CASE NO. 11-50877

    Debtor                                Chapter 7
-------------------------------------------------------------------
ROY PATOUT

    Plaintiff

VERSUS                                    ADV. PROCEEDING NO. 11-5038

ADRIENNE MARIE SMITH

    Defendant

-------------------------------------------------------------------
                     REASONS FOR DECISION
-------------------------------------------------------------------
```

This adversary proceeding involves the complaint filed by Roy Patout seeking a determination of dischargeability of the debt owed to Patout. The trial on the matter was held on August 10, 2012. After hearing testimony and receiving evidence, the court took the

matter under advisement. The court having reviewed the evidence submitted, now issues the following findings of fact and conclusions of law.

## JURISDICTION

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Moreover, the court may enter final orders on the claims and defenses asserted in this case under <u>Stern v. Marshall</u>, ___U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) since this case involves the determination of dischargeability under the Bankruptcy Code.

## BACKGROUND

Roy Patout was an owner of property in Iberia Parish which had purportedly been damaged by illegal dumping by a third party. Defendant, Adrienne Patout Smith was given power of attorney to pursue a claim for damages on behalf of Roy Patout along with claims of other members of the Patout family. There were two tracts of property, one tract owned in indivision by the seven heirs of Gaston Patout and the other owned by Mr. Patout. Mr. Patout owned 3.5 of the 11 acres involved. After twelve years of

Page 2

litigation, Ms. Smith agreed to a settlement through mediation and the Patout family, received the total sum of $1,000,000. Mr. Patout was not consulted regarding the settlement or even advised of the mediation. Shortly after the settlement was reached, Mr. Patout began requesting information about the settlement and the proceeds. In August of 2004, Ms. Smith advised Mr. Patout that she had determined that he would be entitled to approximately $27,000. The calculation was based upon allowing Mr. Patout 18.4% of the net proceeds after subtracting attorney fees, then subtracting the expenses she incurred during the lawsuit, then reducing three-fourths for compensation owed to her based upon the risk that she took during the litigation. Ms. Smith indicated that there was a certified check in the amount of $27,500 being held by her accountant for Mr. Patout's share of the settlement. Mr. Patout disputed the amount and demanded an accounting of the settlement proceeds. Mr. Patout demanded payment of $217,000, representing 31.8% (the percentage of the land owned by him) of the net recovery of $681,626 after attorney fees. Mr. Patout never received any proceeds from the settlement. Ms. Smith thereafter filed a chapter 7 voluntary petition for relief.

## LEGAL ANALYSIS

Mr. Patout seeks a finding that the debt owed to him by the Debtor in the amount of $217,000 be declared non-dischargeable on

Page 3

the basis that the debt arose from fraud or defalcation while acting in a fiduciary capacity. Section 523(a)(4) excludes from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." This exception "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598, 602 (5th Cir. 1998) (quoting In re Boyle, 819 F.2d 583, 588 (5th Cir. 1987)). Fraud for purposes of section 523(a)(4) includes the same elements as fraud under section 523(a)(2)(A). A "defalcation" is a willful neglect of duty, and a willful neglect of duty by a person owing a fiduciary duty is evaluated by a "recklessness standard." See Office of Thrift Supervision v. Felt (In re Felt), 255 F.3d 220, 226 (5th Cir. 2001). The definitions of embezzlement and larceny under section 523(a)(4) are matters of federal law. Embezzlement for purposes of section 523(a)(4) is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." In re Miller, 156 F.3d at 602; Smith v. Hayden (In re Hayden), 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000); RAI Credit Corp. v. Patton (In re Patton), 129 B.R.

Page 4

113, 116 (Bankr. W.D. Tex. 1991). Embezzlement requires a showing that: "(1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor did the appropriation with fraudulent intent." Hayden, 248 B.R. at 525. Larceny is "the fraudulent and wrongful taking away of the property of another with the intent to convert it to the taker's use and with intent to permanently deprive that owner of such property." Id. at 526 (citations and emphasis omitted).

Ms. Smith does not dispute the existence of a fiduciary relationship. The execution of the power of attorney clearly establishes the requisite fiduciary relationship. In addition, Ms. Smith exercised "trust-like" duties with respect to the settlement fund arising from the litigation. See In re Bennett, 989 F. 2d 779, 784-85 (5th Cir. 1993); In re Austin, 2009 WL 3193167 (Bankr. W.D. La. 2009). Ms. Smith's defense is that the power of attorney executed by the parties provided that she would be entitled to deduct her fees and expenses from the amount owed to him and that Mr. Patout "shall be paid an amount which is deemed fair and just" by Ms. Smith. Ms. Smith determined that since she was taking all of the risks in the lawsuit, the $27,500 which she offered to Mr. Patout was fair and just.

The court has reviewed all of the evidence submitted and finds that Ms. Smith neglected her fiduciary duty to Mr. Patout. The

Page 5

court finds that Ms. Smith was reckless in her failure to advise Mr. Patout of the pending mediation, failure to advise him of the result of the mediation, failure to provide an accounting of her fees and expenses and ultimately her failure to pay him any portion of the funds from the lawsuit. Ms. Smith represented numerous parties in the litigation via powers of attorney, yet she determined that all fees and expenses should be borne by Mr. Patout. Ms. Smith even testified that Mr. Patout's power of attorney was the only one which included the provision that she would pay only what she deemed fair and just. Moreover, she testified that she failed to segregate Mr. Patout's share of the settlement and no longer has the funds to fully pay even the portion which she claimed to be his share. The court finds that Ms. Smith's actions were unreasonable and reckless. The court therefore finds that the Plaintiff has met his burden of establishing that the debt was for defalcation while acting in a fiduciary capacity and is therefore non-dischargeable.

The power of attorney executed by Mr. Patout in favor of Ms. Smith is the only document reflecting any sort of agreement between the parties and does not set forth any indication of what the parties agreed to as to the amount of the joint claim which would be attributable to Mr. Patout's property. In determining Ms. Smith's entitlement to consideration of her expenses, the court considers Fifth Circuit precedent that exceptions to the discharge

should be strictly construed. See In re Hudson, 107 F.3d 355, 356 (5th Cir. 1997). The court will therefore determine a calculation which is reasonable based upon the amount of land owned. The net recovery after attorney fees was $681,626. According to Ms. Smith's documentation, she incurred $86,569 of out-of-pocket expenses during the litigation. Subtracting that sum, there was a total net recovery of $595,057. As Mr. Patout owned 31.8% of the property at issue, it seems reasonable to assume that percentage should have been paid to him. Accordingly, the court finds that Ms. Smith should have paid a total of $189,228.13 to Mr. Patout. The court will therefore enter judgment in favor of Mr. Patout in that amount, with said debt being found to be non-dischargeable. Counsel for plaintiff shall submit a judgment in accordance with the foregoing reasons within 10 days of the entry of these Reasons for Decision.

###